IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BEVERLY BURNS MCMILLION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-cv-00229 |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Knowles |
| THE METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON COUNTY, | ) | JURY DEMAND |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Defendants Metropolitan Government of Nashville and Davidson County ("Metro"), Marvin Cox, Cynthia Croom, and Cassandra Johnston-Payne's Motion for Summary Judgment ("Defendants' Motion") (Doc. No. 39) and Memorandum in Support (Doc. No. 44). Plaintiff Beverly Burns McMillion filed a Response to Defendants' Motion (Doc No. 48), to which Defendants filed a Reply (Doc. No. 54). Defendants also filed a Statement of Material Facts Not in Dispute in support of their Motion. (Doc. No. 40.) Plaintiff filed a Response to the Statement of Facts (Doc. No. 49), to which Defendants filed a Reply (Doc. No. 55).

For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED in part.**

## I. BACKGROUND

### A. *Factual History*[1]

Plaintiff began employment as an Office Assistant with the Community Services division of Metropolitan Action Commission (MAC) on November 11, 2002. Defendant Cynthia Croom is the Executive Director of MAC. Ms. Croom is responsible for the overall administration of MAC, including but not limited to day-to-day operations, interpreting the organization's policies and procedures, recruitment, and ensuring compliance with federal regulations relating to grants and any funding that MAC receives. Ms. Croom is also responsible for preparing and proposing MAC's budget. Defendant Marvin Cox is MAC's Program Director for the Community Services division. Mr. Cox is responsible for the overall management and direction of Community Services. He supervised Plaintiff from approximately 2006 until her employment with MAC ended in 2009. Mr. Cox supervised Plaintiff's job performance and conducted her performance evaluations. Defendant Cassandra Johnson-Payne is MAC's Human Resources Manager and is responsible for overall management of MAC's human resources division.

In 2008, Plaintiff requested to take leave and was informed that she had a certain amount of paid leave time available on the books. Mr. Cox reviewed and approved Plaintiff's leave request. However, when Plaintiff made the request she did not have any available paid leave time; an agency error in miscalculating her leave time led to her request being granted. Plaintiff testified in a deposition that she does not have reason to believe that it was anything other than a mistake that MAC records indicated that she had paid leave time available when she did not. As a result of the error, Plaintiff was overpaid for the leave time that she used but had not actually

---

[1] All facts are taken from Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute (Doc. No. 49) unless otherwise noted.

accrued. Under MAC's leave policy, she was considered to be on leave under a "leave without pay" status, and she therefore did not accrue additional leave during her time off.

When Plaintiff returned from leave, she discovered that she had no paid leave available and contacted Tyronda Burgess in MAC's Accounting Office via email. Ms. Burgess informed Plaintiff that she had no paid leave available when she requested to be away from work and, therefore, she had not accrued additional leave while out. Plaintiff testified that she repaid MAC the amount of money equivalent to the leave time which she had mistakenly taken. However, Plaintiff did not feel that she should also be denied the accrual of additional paid leave. Plaintiff thereafter read MAC's vacation leave policy and contacted Mr. Cox, who referred her to Ms. Johnson-Payne. Ms. Johnson-Payne then referred her to MAC's Accounting Office. Plaintiff testified that when she was unable to get a satisfactory response, she contacted an official with the Human Resources Department of Metropolitan Government, who advised her that she should not be penalized twice for the Accounting Department's error.

Plaintiff then filed a grievance with Ms. Croom, challenging the decision not to allow her to accrue leave time while she was out on leave. The grievance stated, "This action is being considered with regard to the following circumstances: change(s) in my Accrued Balance Report (ABR)." (Doc. No. 40-4.) The grievance described the accounting mistake and the decision to place Plaintiff in a "leave without pay" status, and stated "I would like to appeal against this decision." (*Id.*) The grievance also asserted, "No agency should depend on the employee for the accuracy of their financial department. With the number of errors found due to an audit it should be very clear the manual system is not a good check and balance system to ensure accuracy." (*Id.*) Finally, the grievance stated, "I would like to request my sick and vacation leave to be placed back on my ABR." (*Id.*)

In a memorandum to Plaintiff on September 22, 2008, Ms. Croom agreed with Plaintiff that she should not be penalized for the miscalculation by denying her accrual of additional leave time. Ms. Croom used her discretion under MAC's leave policy to allow Plaintiff to accrue the time that she would have accrued while out on leave if she had not been in a "leave without pay" status.

In July of 2008, prior to Plaintiff's grievance regarding her leave, Mr. Cox conducted Plaintiff's Performance Evaluation. Included with the evaluation was a document titled "Conversation #1," representing a discussion that Mr. Cox had with Plaintiff after providing her with the evaluation. In the document, Mr. Cox noted under "Suggested Strategies to Achieve Best Results" that Plaintiff needed to "[d]evelop better ways of responding to agency management and other staff when dissatisfied with decisions that are made." Plaintiff signed the evaluation on June 30, 2008. She did not request additional written clarification about the notation or dispute it.

In January of 2009, several months after Plaintiff's grievance regarding her leave, Mr. Cox conducted Plaintiff's mid-year performance review. The review reiterated Mr. Cox's suggestion that Plaintiff "focus on the suggested strategy to develop better ways of responding to agency management and other staff when dissatisfied with decisions that are made." Ms. Johnson-Payne attended the meeting between Mr. Cox and Plaintiff regarding the review. Mr. Cox's sworn Affidavit states that he asked Ms. Johnson-Payne to attend the meeting because Plaintiff's response to management decisions "was an ongoing issue" and because he "was concerned about [Plaintiff]'s response when confronted" about it. Plaintiff refused to sign the performance review and requested written clarification on the notation regarding her response to agency management.

Ms. Croom testified that Plaintiff's position was partially funded with federal funds and partially with local funds. In 2009, the Mayor asked Ms. Croom and all Metro Department Heads to propose a ten percent across-the-board budget reduction. Ms. Croom sent a letter to all MAC employees dated February 9, 2009, notifying them that three to five positions would be eliminated as a result of the budget reduction. Ms. Croom was the final decision maker regarding which positions would be eliminated. Ms. Croom testified at a deposition that her decision was based on each position's impact on direct services to customers. (Doc. No. 40-2 at 50.)

A few days after receiving Ms. Croom's letter, Plaintiff was called into Ms. Croom's office and advised that her position was being eliminated due to a reduction in force, effective June 30, 2009. (Doc. No. 21 ¶ 17.) Plaintiff then filed a grievance challenging the decision to eliminate her position. Ms. Croom deemed Plaintiff's grievance non-grievable. Plaintiff later filed another grievance with the chair of the Metropolitan Action Commission Board, arguing that the federal funding for her position had not been reduced, and her position should not have been eliminated. The Board Chair informed Plaintiff that she needed to file the grievance with her supervisor first. Plaintiff sent her grievance regarding the funding for her position to Mr. Cox with a cover letter dated July 20, 2009.

Plaintiff also sent an additional grievance regarding a newly-created Office Manager position. Ms. Croom testified at a deposition that as a cost-saving, efficiency measure, MAC began restructuring its Operations Department, specifically the facilities portion of the department, in July of 2008. During the restructuring, an Office Manager position was added. William Williams, whose Administrative Assistant position was eliminated during the same reduction in force in which Plaintiff's employment was terminated, obtained the Manager

5

position. MAC did not offer the position to Plaintiff as one for which she could apply because she did not hold a Bachelor's degree, a minimum requirement for the position. Plaintiff alleged in her grievance that MAC had failed to post a vacancy for the Manager position, and that the job description was rewritten after she inquired about it to require a Bachelor's degree. Mr. Cox denied Plaintiff's grievances by a letter dated August 26, 2009. Ms. Croom's sworn Affidavit states that she identified a data entry position to Plaintiff, but that Plaintiff refused to apply. (Doc. No. 41 ¶ 4).

Plaintiff's attorney then sent a letter to Ms. Croom seeking an additional response to the pending grievances and requesting to "appeal" the findings. Ms. Croom responded by a letter dated September 22, 2009, informing Plaintiff and her attorney that the matters were not grievable under MAC policy. MAC's Personnel Committee upheld Ms. Croom's findings. The full Board adopted the Personnel Committee's decision that the reduction in force was not grievable at a hearing on September 24, 2009. The full Board also adopted the Personnel Committee's finding that the Office Manager position was not grievable at a meeting on January 28, 2010.

Ms. Croom testified that after Plaintiff's position was eliminated and in the new fiscal year, MAC received additional funding through the Federal American Recovery Act to hire individuals to assist in various functions. Ms. Croom testified that the grant required that all individuals hired be selected from a list provided by Tennessee's Department of Human Services. Ms. Croom testified that MAC selected three individuals from the list who assisted with performing the duties that Plaintiff had previously performed as well as other tasks.

*B. Procedural History*

On February 8, 2010, Plaintiff filed her original Complaint in the Circuit Court of Davidson County, alleging violations of her rights under the First Amendment and her right to due process under the Fourteenth Amendment as provided by 14 U.S.C. § 1983. (Doc. No. 1-1.) Prior to the deadline for removal or a responsive pleading, Plaintiff filed an Amended Complaint, adding a claim for age discrimination under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §4-21-401. (Doc. No. 1-2.) Defendants removed the case to this Court on March 9, 2010, under federal question jurisdiction. (Doc. No. 1.)

On March 16, 2010, Defendants filed a Partial Motion to Dismiss. (Doc. No. 4.) Prior to its resolution, Magistrate Judge Knowles granted Plaintiff leave to amend her complaint. (Doc. No. 20.) Plaintiff filed a Second Amended Complaint on May 24, 2010 (Doc. No. 21) and Magistrate Judge Knowles denied as moot Defendants' first Motion to Dismiss (Doc. No. 22). On June 7, 2010, Defendants filed a Partial Motion to Dismiss the Second Amended Complaint. (Doc. No. 24.) Prior to its resolution, Defendants filed this Motion for Summary Judgment. (Doc. No. 39.)

This Court entered an Order on March 22, 2011, granting in part Defendants' Partial Motion to Dismiss. (Doc. No. 45.) Specifically, the Court dismissed Plaintiff's procedural due process claim. (*Id.*) The Court now considers Defendants' Motion for Summary Judgment on Plaintiff's remaining claims of First Amendment retaliation and age discrimination.

This Court has federal question jurisdiction over Plaintiff's First Amendment claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

## II.  LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.*

## III. ANALYSIS

Defendants have moved for summary judgment on both of Plaintiff's remaining claims. Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff cannot establish that she engaged in protected conduct under the First Amendment, and there is no causal connection between any protected conduct and an adverse employment action. (Doc. No. 44 at 1.) Further, Defendants assert that the individual Defendants, Ms. Croom, Mr. Cox, and Ms. Johnson-Payne, are entitled to qualified immunity. (*Id.*) Defendants also argue that Plaintiff's age discrimination claim against Metro under the THRA fails because Plaintiff cannot establish that she was fired on the basis of her age or that the reduction in force was a pretext for age discrimination. (*Id.* at 2.)

*A. Plaintiff's First Amendment Claim*

Under 42 U.S.C. § 1983, every person who causes the deprivation of another's constitutional rights shall be liable in an action at law. Plaintiff claims that Defendants are liable under § 1983 because they retaliated against her for activity that is protected by the First Amendment. (Doc. No. 21 at 9.) Specifically, Plaintiff claims that Defendants took adverse action against her by giving her a negative performance evaluation and eliminating her job position because of the grievances she filed against MAC in 2008. (*Id.*) Plaintiff asserts that Defendants thus retaliated against her for constitutionally protected activity. (*Id.*)

To determine whether a public employee has a First Amendment retaliation claim, a court must make a three-step inquiry. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180

(6th Cir. 2008). First, a court "must ascertain whether the relevant speech addressed a matter of public concern," which is a question of law. *Id.* Next, the court "must balance the interests of the public employee 'as a citizen in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003)). Finally, the court must determine whether the speech was a substantial or motivating factor in the adverse employment action. *Id.* (quoting *Rodgers*, 344 F.3d at 596).

Defendants argue that Plaintiff fails to satisfy the threshold inquiry because she cannot establish that her 2008 grievance was protected speech under the First Amendment, as it did not involve a matter of public concern. (Doc. No. 44 at 11.) Defendant contends that the grievance was only about Plaintiff's personal leave time, rather than the policy, other employees, or public concern. (*Id.*)

The Court finds Defendants' argument persuasive. Matters of public concern include speech that "relat[es] to any matter of political, social, or other concern to the community." *Rodgers*, 344 F.3d at 596 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Such speech includes "informing the public that a governmental entity failed to 'discharge its governmental responsibilities' or 'bringing to light actual or potential wrongdoing or breach of public trust.'" *Id.* (quoting *Connick*, 461 U.S. at 148). In distinguishing between public and private matters, the focus should be on the point of the speech, rather than what it might incidentally convey. *Id.* (citing *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995)); *Connick*, 461 U.S. at 148. Further, an employee "must be speaking as a citizen, not as an employee for personal interest purposes." *Id.* (citing *Connick*, 461 U.S. at 146-47). Thus, "'internal personnel disputes or complaints about an employer's performance' do not touch upon

a matter of public concern." *Id.* (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)).

Plaintiff agrees that she pursued her grievance to recover her lost leave time, but argues that her more important purpose was to address a systemic flaw in the accounting procedures for keeping track of accrued leave. (Doc. No. 48 at 15.) Plaintiff argues that this issue is a matter of public concern because it unfairly penalizes government employees and may result in financial hardship, which would have a detrimental effect on employee morale and efficiency. (*Id.*) Plaintiff correctly asserts that under the law, whether Plaintiff's grievance addressed a matter of public concern must be determined by its content, form, and context, as revealed by the whole record. *Hughes*, 542 F.3d at 180 (citing *Connick*, 461 U.S. at 147-48). Plaintiff asserts that other evidence in the record supports the public nature of her grievance. (Doc. No. 48 at 15.) She cites Ms. Croom's letter stating that, as a result of Plaintiff's grievance, Ms. Croom directed the Accounting Department to implement a procedure to avoid calculation errors in the future. (*Id.*) Plaintiff also cites her conversation with an official at Metro's Human Resources Department regarding the accrual of her leave time. (*Id.*)

Whether speech addresses an issue of public concern is a question of law for the court. *Hughes*, 542 F.3d at 180. The Court finds that the content, form, and context of Plaintiff's grievance show that, as a matter of law, the point of the speech was to address a personal matter. Plaintiff filed it immediately after an adverse action regarding her personal accrued leave time and has not introduced evidence, other than her own claims, that addressing the policy specifically in her grievance was anything other than incidental to her personal interest in recovering her lost leave time. The grievance states that its purpose was to appeal a decision

11

regarding Plaintiff's Accrued Balance Report and primarily focuses on Plaintiff's personal injury.

Although Plaintiff claims that she had a greater purpose in challenging the accounting system, the Sixth Circuit has declined to inquire into the motivations of a speaker in evaluating whether speech concerned a public matter. *Rodgers*, 344 F.3d at 600. The Court's duty is "not to discern [a speaker]'s underlying motive, but rather to evaluate [the] point as it is presented in the speech." *Id.* While Plaintiff explicitly mentioned flaws in the accounting system in her grievance, and Ms. Croom's letter did state that she was directing the Accounting Department to improve its leave accounting system, these statements were a very small portion of the overall correspondence. The fact that a plaintiff makes "incidental, fleeting references" to a potential matter of public concern "does not change the overall character of the [p]laintiff's conduct." *Doherty v. City of Maryville*, No. 09-5217, 2011 WL 2312080, at *7 (6th Cir. June 13, 2011). The context, form, and content of these statements demonstrate that they were no more than incidental to the point of addressing Plaintiff's personal concerns.

Plaintiff's Response to Defendants' Motion states that the Court must also consider her conversation with Metro's Human Resources Department in determining whether her grievance was a matter of public concern, but does not explain how it is relevant. (Doc. No. 48 at 15.) The Court finds little evidence in the record regarding the content of Plaintiff's alleged conversation. Plaintiff's Second Amended Complaint states that she initiated the conversation "to clarify her employee rights," and that she was told "she should have the option of paying back the amount of money she had been overpaid." (Doc. No. 21 ¶ 11.) Plaintiff's Affidavit states that she contacted the Human Resources department "to find out whether [she] was being treated fairly," and was advised that "[she] should not have been penalized for an accounting error that was not

[her] fault." (Doc. No. 50 ¶ 6.) Plaintiff has thus averred only that her conversation with the Human Resources official concerned how one specific accounting error caused unfairness to her personally. The Court does not find this to be persuasive evidence that the point of the conversation was to raise an issue of public concern, or that the issue of flaws in MAC's leave policy or system for calculating accrued leave was, in fact, a matter of public concern. Further, the lack of evidence that the conversation addressed the policy as a public matter undermines Plaintiff's claim that the conversation itself could be protected speech. Taking the record as a whole, the Court finds that the point of Plaintiff's grievance was no more than employee speech for personal interest purposes, which is not protected activity under the First Amendment. *Rodgers*, 344 F.3d at 596.

Further, the Court finds that the issue of errors in MAC's leave time accrual system is not a matter of public concern. In *Connick*, the Supreme Court held that the majority of an assistant prosecutor's questionnaire to fellow employees about "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns" did not address matters of public concern. 461 U.S. at 138. The Supreme Court held that only the survey's question regarding political campaigns, but not the questions about the office transfer policy and the need for a grievance committee, could be a matter of public concern. *Id.* In *Unger v. City of Mentor*, 387 F. App'x 589 (6th Cir. 2010), the Sixth Circuit cited *Connick* in concluding that a plaintiff's "references to the inner workings of a government office . . . without implications for the political process or the public interest" are not matters of public concern. *Id.* at 592. The Sixth Circuit then found than an employee's requests for reclassification of her employment status did not address matters of public concern, despite the employee's claim that it was important for the public to be aware

13

of the employer's reclassification system.  *Id.*  Speech which the Sixth Circuit has upheld as being related to a matter of public concern include a memo about the quality of patient care in a state hospital, *Rodgers*, 344 F.3d at 601, a report about an employer's violations of environmental regulations, *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617 (6th Cir. 2001), and conversations with a newspaper reporter about allegations of sexual harassment against a public agency director, *Hughes*, 542 F.3d at 181-82.

The Court finds that, even if the point of Plaintiff's grievance were to address the overall unfairness of MAC's policies or processes, the issue lacks implications for the political process or the public interest like those in the examples of speech which the Sixth Circuit found to be protected.  Rather, Plaintiff's complaints about MAC's leave accrual process are more similar to the plaintiff's questions in *Connick* regarding an office transfer policy and the need for a grievance committee.  *Connick*, 461 U.S. at 138.  References to the inner workings of MAC's office, relating to a personnel dispute and complaints about MAC's performance, do not address a matter of public concern.  *Unger*, 387 F. App'x at 592; *Rodgers*, 344 F.3d at 596.

Defendant asserts that Plaintiff has not met the other requirements for a retaliation claim because she has not established a causal connection between the reduction in force and her grievance against MAC in 2008.  (Doc. No. 44 at 1.)  However, if a public employee's speech does not involve a matter of public concern, a court need not evaluate the claim further. *Doherty*, 2011 WL 2312080, at *5.  Because the Court finds that Plaintiff's grievance does not satisfy the threshold inquiry, the Court need not reach the other elements of Plaintiff's retaliation claim, and the Court hereby **GRANTS** summary judgment in favor of Defendants as to Plaintiff's First Amendment claim.  Further, because Plaintiff's First Amendment claim is dismissed on its merits, the Court need not address Defendants' qualified immunity defense.

### B. Plaintiff's Age Discrimination Claim

Plaintiff claims that, in the alternative to her First Amendment retaliation claim, she was terminated from her employment because of her age in violation of the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-401. (Doc. No. 21 at 11.) However, 28 U.S.C. § 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). Thus, "if federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* Having dismissed Plaintiff's First Amendment claim, and as there are no remaining claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim under the THRA. Plaintiff's age discrimination claim is therefore **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in part** as to Plaintiff's First Amendment claim, and Plaintiff's age discrimination claim under the Tennessee Human Rights Act is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

It is so ORDERED.

Entered this ___29th___ day of June, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT